**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Jack Charles Conroy,                    )    No. CV 08-00210-PHX-MHM (ECV)
                                        )
                Plaintiff,              )    **ORDER**
                                        )
vs.                                     )
                                        )
Robin Avalos,                           )
                                        )
                Defendant.              )
                                        )

Plaintiff Jack Charles Conroy, who is presently confined in the Arizona State Prison Complex–Florence Unit in Florence, Arizona, brought this civil rights action under 42 U.S.C. § 1983 against various employees of the Maricopa County Sheriff's Office (MCSO) and Correctional Health Services (CHS) (Doc. # 57). Before the Court is Defendants' Motion for Summary Judgment (Doc. # 112), which is fully briefed (Doc. ## 127, 131). The Court will grant Defendants' motion and dismiss this action with prejudice.

**I.    Background**

Plaintiff filed this action in January 2008; his Second Amended Complaint was filed on September 17, 2008, presenting ten claims for relief against the following Defendants: (1) CHS Physician's Assistant Robin Avalos; (2) CHS Physician Gan; (3) CHS Physician Wilcox; (4) Maricopa County; (5) CHS Nurse Theresa Wilson #871; (6) CHS Nurse Dan Aldrete #203; (7) CHS Psychiatrist Drapeau; (8) CHS employee Niels Robert Von Dach #426; (9) CHS Nurse Dee Blacek; (10) Maricopa County Sheriff Joseph Arpaio; (11) CHS

#718; (12); and (13) CHS #221 (Doc. # 57 at 2-4). All of Plaintiff's claims involve deliberate indifference to his serious medical needs; each count is levied against different Defendants.[1]

In Count I, Plaintiff alleged that Avalos was deliberately indifferent to his serious medical needs when she misdiagnosed Plaintiff with a muscle strain on November 1, 2007 (Doc. # 57 at 6-8). Plaintiff alleged that until December 19, 2007, when he was eventually diagnosed with osteomyelitis and arthritis,[2] all his medical requests were ignored and he was forced to suffer in pain. In Count II, Plaintiff claimed that Gan was deliberately indifferent to Plaintiff's serious medical needs by denying him medical care, purposefully causing him pain during a physical examination, and interfering with Plaintiff's treatment at the Maricopa Medical Center (id. at 9-10). In Count III, Plaintiff claimed that Wilcox was deliberately indifferent to Plaintiff's serious medical needs by denying Plaintiff medical care for two months (id. at 11-12). In Count V, Plaintiff alleged that the denial of treatment he experienced was the result of policies or procedures promulgated by Maricopa County and Sheriff Arpaio (id. at 14-16). In Count VI, Plaintiff asserted that CHS Nurse #871 was deliberately indifferent to Plaintiff's serious medical needs when Plaintiff fell off his bed and she told him to crawl onto his mattress to sleep (id. at 17). In Count VIII, Plaintiff claimed that Aldrete was deliberately indifferent to Plaintiff's serious medical needs when he assigned Plaintiff to a cell furthest from the legal phones and showers, which forced Plaintiff to forego showering for a week because it was too painful to walk (id. at 20). In Count IX, Plaintiff alleged that Drapeau took Plaintiff's wheelchair, causing Plaintiff a risk of permanent disability or serious injury (id. at 21). In Count X, Plaintiff asserted that Vondach was deliberately indifferent to Plaintiff's serious medical needs when he denied Plaintiff psychiatric care for two months upon Plaintiff's transfer back to the Maricopa County Jail

---

[1] Plaintiff's motion to amend his First Amended Complaint was denied with respect to Counts IV, VII, and XI because amendment would be futile. As a result, Defendants Rowan and the John Doe Defendants were dismissed (Doc. # 56).

[2] Osteomyelitis is described as inflammation of the bone marrow and adjacent bone. See Stedmans Medical Dictionary Osteomyelitis (27th ed. 2000).

(id. at 22).  In Count XII, Plaintiff claimed that CHS employees #718 and #221 were deliberately indifferent to Plaintiff's serious medical needs by failing to take action on Plaintiff's grievances (id. at 25).  And in Count XIII, Plaintiff alleged that Blacek was deliberately indifferent to Plaintiff's serious medical needs when she refused to provide Plaintiff with his prescribed pain medication but noted in his chart that he had received it (id. at 26).  Plaintiff sought monetary damages and injunctive relief (id. at 27).

## II.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the ground that no Defendant was deliberately indifferent to Plaintiff's serious medical needs (Doc. # 112).  In support of their motion, Defendants submit their statement of facts (id., Defs.' Statement of Facts (DSOF)); documents from Plaintiff's criminal case (id., Exs. 1-3); Plaintiff's medical records from April 10, 2007 through August 1, 2008 (id., Ex. 4); Plaintiff's medical records dated November 1, 2007 (id., Ex. 5); a Medical Chart Summary from November 1, 2007 through August 1, 2008 (id., Ex. 6); the Maricopa County Grievance Policy DJ-3 (id., Ex. 7); Plaintiff's grievance summary chart (id., Ex. 8); Avalos's CHS entry and Orders dated November 1, 2007 (id., Exs. 9-10); Plaintiff's deposition transcript (id., Ex. 11); CHS Order Form and Maricopa County Speedletter (id., Ex. 12); Gan's CHS entry dated November 13, 2007 (id., Ex. 13); Wilcox's January 10, 2008 report (id., Ex. 14); Wilson's CHS entries dated November 27, 2007 (id., Exs. 15-16); Aldrete's CHS entry dated November 29, 2007 (id., Ex. 17); CHS entries dated November 27 through December 4, 2007 (id., Exs. 18-19); Drapeau's CHS entry dated November 27, 2007 (id., Ex. 20); CHS Order Form and Maricopa County Speedletter dated November 28, 2007 (id., Ex. 21); CHS receiving form (id., Ex. 22); CHS Policy J-E-05 (id., Ex. 23); Vondach's CHS entry dated April 17, 2007 (id., Ex. 24); CHS entry dated April 18, 2007 (id., Ex. 25); CHS Psychiatric Admission dated May 16, 2007 (id., Ex. 26); Plaintiff's grievances (id., Ex. 27); the affidavit of Dr. Gerardo Gregorio (id., Ex. 28); Maricopa County Policy #A1501 (id., Ex. 29); CHS Order Sheets dated November 8, 2007 (id., Ex. 30); Medication Order Sheet dated November 8, 2007 (id., Ex. 31); and Medication Administration Record dated November 8, 2007 (id., Ex. 32).

Plaintiff filed a response in opposition to Defendants' motion, supported by 90 exhibits consisting primarily of medical records, health needs request forms, grievances, and various other documents (Doc. # 127). Defendants then filed their reply (Doc. # 131).

### III. Legal Standards

#### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). And the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

#### B. Deliberate Indifference

The Eighth Amendment requires that prisoners receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Id. The test for deliberate indifference consists of two parts in the Ninth Circuit. McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc). A plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted). Second, a plaintiff must establish deliberate indifference to that need. McGuckin, 974 F.2d at 1060. A state prison official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). This requires a "purposeful act or failure to respond to a prisoner's pain or possible medical need" and "harm caused by the indifference." Jett, 439 F.3d at 1096. Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provided the care. Id. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. McGuckin, 974 F.2d at 1060. A prisoner does not have to prove that he was completely denied medical care in order to demonstrate deliberate indifference, Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000), but if the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

Negligence or medical malpractice does not establish a sufficiently culpable state of mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). "[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted). To prevail on a claim involving choices between alternative courses of treatment, a prisoner

must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**IV.  Serious Medical Need**

At the outset the Court must determine whether Plaintiff was suffering from a serious medical need.  Defendants contend that Plaintiff's complaints were subjective, which precludes a finding that he suffered from a serious medical need.  In the Ninth Circuit, a plaintiff can show a serious medical need "by demonstrating that 'failure to treat a [] condition *could* result in further significant injury or the unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted) (emphasis added).

Defendants have not meaningfully argued that Plaintiff's osteomyelitis cannot lead to further significant injury.  The Court finds that a reasonable jury could conclude that osteomyelitis is a serious medical need.  Consequently, for summary judgment purposes, the first prong of the deliberate indifference test is satisfied.  Estelle, 429 U.S. at 104.  Thus, the summary judgment analysis turns on whether Defendants' response to Plaintiff's needs was deliberately indifferent.  See Jett, 439 F.3d at 1096.

**V.  Counts I, II, and III - Defendants Avalos, Gan, and Wilcox**

In Counts I, II, and III, Plaintiff claimed that Avalos, Gan, and Wilcox completely denied Plaintiff treatment for his osteomyelitis, which was eventually diagnosed on December 19 (Doc. # 57 at 6-12).

**A.  Defendants' Contentions**

Defendants argue that Avalos, Gan, and Wilcox were not deliberately indifferent to Plaintiff's serious medical needs.  They state that Plaintiff first complained of hip pain on November 1, 2007, and was examined by Avalos that day (DSOF ¶ 9).  Plaintiff reported that he felt a muscle "pull" while climbing onto the top bunk (Doc. # 112, Ex. 4).  Avalos examined Plaintiff, ordered three types of medication, a wheelchair, and a follow-up appointment, and authorized him to use the lower bunk in his cell (DSOF ¶ 10).  Defendants

further state that Avalos continued the order for Plaintiff's wheelchair, ordered x-rays and pain medications, and scheduled follow-up appointments (DSOF ¶ 13).

With respect to Gan and Wilcox, Defendants argue that both physicians examined Plaintiff and ordered follow-up tests and outside consultations (DSOF ¶¶ 16, 22, 24). Consequently, Defendants maintain that neither physician was deliberately indifferent to Plaintiff's serious medical needs.

### B.    Plaintiff's Contentions

Plaintiff responds that Avalos, Gan, and Wilcox ignored his serious medical needs. Plaintiff contends that on November 1, 2007, Avalos misdiagnosed him with a muscle strain, which was eventually diagnosed as osteomyelitis (Doc. # 127 at 3). Plaintiff contends that he requested pain medication on November 1 (id.). Further, Plaintiff asserts that Avalos ordered but did not provide a wheelchair, a follow-up appointment for November 5, or sufficient pain medication (id. at 4). Plaintiff argues that Avalos denied all of his medical requests (id. at 8). Plaintiff states that he was examined again by Gan on November 13, who demanded that Plaintiff not use his crutches, even though it caused Plaintiff pain to walk (id. at 13). Plaintiff claims that Gan intentionally aggravated his injury through his physical examination and failed to provide him with any treatment (id. at 14). With respect to Wilcox, Plaintiff argues that he ignored Plaintiff's medical needs and denied him medical care (id. at 18).

### C.    Analysis

The Court finds that Avalos, Gan, and Wilcox are entitled to summary judgment because Plaintiff's response fails to point to any evidence in the record to show that Avalos, Gan, or Wilcox was deliberately indifferent to his serious medical needs. Indeed, the evidence demonstrates that Defendants provided considerable treatment to Plaintiff, thereby precluding a finding of deliberate indifference.

The evidence reflects that Plaintiff first complained about his pelvic pain on November 1, 2007, telling Avalos that he felt  a "pull" in his left buttock when he was climbing onto the top bunk (Doc. # 112, Ex. 4). Avalos examined Plaintiff and diagnosed

a muscle strain (id.). Avalos ordered a lower bunk, a wheelchair, a 10-day prescription for both Vicodin (pain medication) and Flexeril (muscle relaxant), a 3-day prescription for Vistaril (anti-anxiety), an extra blanket, and a follow-up appointment (id., Ex. 10; Doc. # 119, Ex. 12).

Avalos next examined Plaintiff on November 6, ordered an x-ray, continued Plaintiff's wheelchair for two weeks, ordered 800mg Ibuprofen tablets for 10 days, and ordered a follow-up in 5 days (Doc. # 112, Exs. 4, 12).[3] On November 13, Gan performed a thorough physical examination of Plaintiff and observed his ability to flex, abduct, and adduct his left leg. Gan opined that Plaintiff's pain was musculoskeletal and referred Plaintiff for an orthopedic consultation (id., Ex. 13). Wilcox examined Plaintiff on November 15, did another thorough physical examination and ordered an MRI and pain medications (Doc. # 119, Ex. 24).[4] Plaintiff cut his wrists on November 23 and was taken to the Maricopa Medical Center for stitches (Doc. # 112, Ex. 4). After his return, he was kept in the medical unit for observation (id.). Plaintiff underwent an MRI on December 19 and was tentatively diagnosed with osteomyelitis and arthritis on December 21 (id.).[5]

Plaintiff argues that Avalos, Gan, and Wilcox "should have diagnosed him" more quickly and were therefore deliberately indifferent (Doc. # 127 at 4; Doc. # 112, Ex. 11, Pl. Dep. 25:3-5). Plaintiff stated during his deposition that he suffered from osteomyelitis from

---

[3] In his response, Plaintiff alleged that Avalos was deliberately indifferent to his medical needs because he did not have a follow up on November 5. But a delay of one day in a follow-up appointment simply does not rise to the level of a constitutional violation.

[4] Plaintiff makes much of Wilcox's opinion that Plaintiff was "amplifying" his symptoms (Doc. # 127 at 14-15). But Wilcox's opinion does not preclude summary judgment because between November 1 and 15, three individuals thoroughly examined Plaintiff and could not identify the source of his pain. They did not ignore Plaintiff; they simply were not able to diagnose Plaintiff until he underwent an MRI, which Wilcox ordered. The fact that they suspected Plaintiff was exaggerating his symptoms does not mandate a finding of deliberate indifference because they kept investigating his symptoms despite their concerns.

[5] In his response, Plaintiff asserts that the infection can be fatal and had spread throughout his entire left side (Doc. # 127 at 3, 12). Plaintiff fails to support this contention with any evidence, and his medical records do not support the inference that the infection had spread throughout his entire left side.

November 1, 2007 until approximately November 23, 2007.[6]  But as stated above, Plaintiff was examined—no less than four times—by Avalos, Gan, and Wilcox, underwent x-rays and other tests, was referred for an orthopedic consultation, and received pain medication (Doc. # 119, Ex. 10; Doc. # 112, Ex. 13; Doc. # 119, Ex. 24).  Further, Plaintiff testified that his December 24, 2007 blood tests showed that the infection had resolved (Doc. # 112, Ex. 11, Pl. Dep. 37:24-38:4).  As a result, Plaintiff's argument that he was "denied treatment" from November 1, 2007 through August 2008 is simply conclusory, unsupported and is, in fact, contradicted by the record (Doc. # 127 at 4).[7]  The fact that he was not diagnosed with osteomyelitis until December 19 does not establish deliberate indifference because there is no evidence that any Defendant purposefully ignored Plaintiff's needs.[8]  At most, Defendants were negligent in not diagnosing Plaintiff's osteomyelitis more quickly.  But this does not amount to deliberate indifference because there is no evidence that Avalos, Gan, or Wilcox knew of and disregarded a substantial risk to Plaintiff's health.

The summary judgment briefing reveals that Plaintiff's chief complaint is that Defendants were deliberately indifferent to him because they failed to provide "sufficient" pain medication (Doc. # 127 at 4).  Plaintiff states that he requested pain medication on November 1 and the evidence reflects that Avalos ordered pain medication that day (Doc. # 120, Ex. 10).  Next, on November 7, Avalos ordered a 10-day prescription for 800mg Ibuprofen tablets (Doc. # 112, Ex. 12; Doc. # 119, Ex. 10; Doc. # 127 at 14).[9]  And on

[6] Plaintiff testified that he received antibiotics after he cut his wrists on November 23, 2007, which incidentally treated the osteomyelitis (Doc. # 112, Ex. 11, Pl. Dep. 38:13-20).

[7] The Court notes that in his response, Plaintiff makes no argument—and points to no evidence—that Avalos, Gan, or Wilcox was deliberately indifferent to his serious medical needs after November 23.  Further, the record reflects that Plaintiff was housed in the jail's medical unit after November 23 and was constantly monitored (Doc. # 112, Ex. 4).

[8] In fact, it was Plaintiff himself who at first characterized his injury as a muscle strain (Doc. # 112, Ex. 4; Ex. 11, Pl. Dep. 87:18-21).

[9] Plaintiff's response is also internally inconsistent (Doc. # 127).  On page 8, Plaintiff claims that he received no medication from November 9-12 (id. at 8).  But on page 5,

November 14, Avalos ordered Vistaril and Vicodin (Doc. # 112, Ex. 30).  Plaintiff also acknowledged in his deposition and in a medical request form that he did receive Vicodin (Doc. # 112, Ex. 11, Pl. Dep. at 16:3-5; Doc. # 119, Ex. 10).

Plaintiff's claim related to pain medication is simply a disagreement with the pain medication he received, which is insufficient to establish deliberate indifference.  See Toguchi, 391 F.3d at 1058.  Plaintiff acknowledged that no Defendant was aware he had anything more than a muscle strain before his MRI on December 19 (Doc. # 112, Ex. 11, Pl. Dep. at 27:14-24).  Consequently, there is no question of material fact as to whether Avalos, Gan, or Wilcox was aware of and disregarded a substantial risk to Plaintiff's health before they even knew what his diagnosis was.  Jackson, 90 F.3d at 332.  This conclusion is underscored by Defendants' persistent testing to determine the cause of Plaintiff's pain.

Nor has Plaintiff introduced any evidence—besides his own conclusion—that prescribing Vicodin and Ibuprofen was medically unacceptable.  See Toguchi, 391 F.3d at 1058.  And while the Court is sympathetic to the pain Plaintiff experienced before he was diagnosed, it does not mandate a finding that any Defendant purposefully ignored Plaintiff with the knowledge that he faced a substantial risk of harm.  It appears that Plaintiff is arguing that Ibuprofen is not a pain medication, but Avalos's choice to prescribe prescription-strength Ibuprofen does not constitute a decision to ignore Plaintiff's pain.

To the extent that Plaintiff claims he was without pain medication between November 8 and 23, his claim fails for three reasons.  First, Plaintiff was always provided with either Vicodin or Ibuprofen tablets (Doc. # 112, Exs. 10, 30).  Further, Plaintiff points to no evidence that Avalos, Gan, or Wilcox was responsible for any alleged deprivation of pain medication because there is no evidence that they were the ones to administer the medication

---

Plaintiff writes that he received Flexeril on November 8 and 10 (id. at 5).  This discrepancy is not material, however, because the evidence reflects that Avalos and Wilcox ordered pain medication for Plaintiff, thereby precluding a finding that either Defendant purposefully ignored Plaintiff's pain (Doc. # 119, Exs. 10, 21).

to inmates.[10]   Nor did Gan or Wilcox examine Plaintiff until November 13 and 15, respectively.  Consequently, neither Defendant could be deliberately indifferent to Plaintiff before they ever examined him.  And, as stated, both Avalos and Wilcox ordered pain medication for Plaintiff (Doc. # 112, 30; Doc. # 119, Exs. 6, 10, 21).

Finally, Plaintiff has failed to introduce any expert medical testimony to support his contention that Avalos, Gan, or Wilcox was deliberately indifferent to his serious medical needs, as opposed to merely negligent.  See Gorney v. Meaney, 150 P.3d 799, 804 (Ariz. App. 2007) (citing Gregg v. Nat'l Med. Health Care Servs., Inc., 699 P.2d 925, 928 (Ariz. App. 1985)).  To the extent that Plaintiff contends his medical records support his position, they require interpretation by an expert, and it was incumbent upon Plaintiff to provide an affidavit or deposition of an expert to establish the appropriate standard of care.  See Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir. 1988) (granting summary judgment against a plaintiff who relied only on her own allegations and conclusory statements that defendants had been negligent and who failed to provide affidavits or depositions of experts).

Defendants' actions do not reflect a "purposeful act or failure to respond to [Plaintiff's] pain or possible medical need."  Jett, 439 F.3d at 1096.  Plaintiff has simply not introduced any medical evidence from which the Court could draw the inference that Avalos, Gan, or Wilcox was *deliberately* indifferent or *purposely* failed to act in response to Plaintiff's medical needs.  See McGuckin, 974 F.2d at 1060.  Avalos, Gan, and Wilcox are therefore entitled to summary judgment on Counts I, II, and III.

## VI.   Count V - Defendants Maricopa County and Sheriff Arpaio

---

[10] Plaintiff points to a medical needs request form submitted on November 3, 2007 to show that Avalos discontinued Plaintiff's pain medication and chose not to renew his wheelchair order (Doc. # 119, Ex. 10).  This document does not support Plaintiff's assertion; indeed, it contradicts Plaintiff's claim.  Plaintiff's request states that he has been receiving pain medication twice a day, but he would like pain medication at night.  Plaintiff also states that he is waiting for a wheelchair and a transfer to a medical unit.  The response from medical personnel states that Plaintiff has been scheduled for an appointment, the provider would be notified about his request for pain medication at night, and his chart does not reflect an order for a transfer to the medical unit.  In short, Plaintiff's claim that Avalos denied Plaintiff a wheelchair and discontinued his pain medication is unsupported.

In Count V, Plaintiff claimed that Maricopa County and Maricopa County Sheriff Joseph Arpaio instituted unconstitutional policies, practices, or customs pertaining to inmates with disabilities and for detention officer training for emergency medical procedures (Doc. # 57 at 14-16).

### A. Defendants' Contentions

Defendants first contend that Maricopa County—and not Arpaio—is responsible for inmate health care, and therefore any claim against Arpaio is misplaced (Doc. # 112 at 14). Additionally, Defendants maintain that Plaintiff cannot establish that Maricopa County or Arpaio instituted a policy or practice that caused a violation of his constitutional rights (id.). Defendants point to Plaintiff's deposition, wherein he acknowledged that he had no proof that any injury he suffered was caused by any policy or procedure (id.). Defendants further argue that Plaintiff's concession that Arpaio was not aware of Plaintiff's need for medical treatment establishes that he cannot be liable for any constitutional violation (id. at 18).

### B. Plaintiff's Response

Plaintiff argues in response that "Maricopa County and Sheriff Arpaio are responsible for the policy pertaining to inmates with disabilities" and "failed to take reasonable measures to guarantee his safety" (Doc. # 127 at 18, 20).

### C. Analysis

The Court finds that Maricopa County and Arpaio are entitled to summary judgment on Count V. To maintain his official-capacity claim, Plaintiff must establish that (1) he was deprived of a constitutional right and (2) the defendant had a policy, practice, or custom that (3) amounted to deliberate indifference to the constitutional right and (4) was the "moving force" behind the constitutional violation. Mabe v. San Bernardino County, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (quoting Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996)).

The Ninth Circuit recently reiterated that three ways exist to meet the policy, practice, or custom requirement for municipal liability under § 1983:

(1) the plaintiff may prove that a public entity employee

committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action.

Avalos v. Baca, — F.3d —, No. 07-56511, at *7 (9th Cir. Feb. 24, 2010) (quoting Avalos v. Baca, 517 F. Supp 2d 1156, 1162 (C.D. Cal. 2007)). Nor must an unconstitutional policy be formal or written to create municipal liability under § 1983. The policy must, though, be "permanent and well settled as to constitute a custom or useage with the force of law." Id. (quoting Avalos, 517 F. Supp 2d at 1162 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

In this case, Plaintiff introduces no evidence of a policy, practice, or custom that gave rise to any alleged constitutional violation. Plaintiff's response merely concludes that because he believes he received deficient medical care, it was pursuant to a policy, practice, or custom of Maricopa County or Arpaio (Doc. # 124 at 19-20). But Plaintiff's response consists of nothing more than conclusory statements, unsupported by factual material, which are insufficient to defeat summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Moreover, Plaintiff acknowledges that Arpaio had no knowledge of his individual need for medical care (Doc. # 112, Ex. 11, Pl. Dep. 32:24-33:1-5). Based on this record, Maricopa County and Arpaio are entitled to summary judgment.

## VI.    Count VI - Defendant Wilson

In Count VI, Plaintiff alleged that while he was housed in the Lower Buckeye Jail infirmary, he fell onto his left side and Wilson denied Plaintiff medical care (Doc. # 57 at 17).

### A.    Defendants' Contentions

Defendants state that on November 27, 2007, Plaintiff was housed in the infirmary when he fell off his bed onto the floor, falling onto his left side (Doc. # 112 at 19).

Defendants state that Wilson documented Plaintiff's fall and periodically checked on him throughout the night (DSOF ¶¶ 34-36). As a result, Defendants claim that Wilson could not have been deliberately indifferent to Plaintiff's medical needs because she monitored him and did not disregard a serious risk to his health.

### B. Plaintiff's Contentions

Plaintiff responds that when he fell, Wilson denied Plaintiff assistance and told him to crawl onto his mattress and sleep on the floor (Doc. # 127 at 21-22). Plaintiff states that she "denied him needed medical care" (id.).

### C. Analysis

Wilson is likewise entitled to summary judgment because there is no evidence that Wilson was deliberately indifferent to Plaintiff's serious medical needs. The record reflects that on the evening of November 26, 2007, Plaintiff fell off his bed and onto the floor (Doc. # 112, Ex. 4). Plaintiff's medical records further reflect that Wilson checked on Plaintiff at 1:30 a.m. and noted that Plaintiff was walking around his cell without difficulty (id.). And when Wilson checked on Plaintiff again at 4:00 a.m., she noted that Plaintiff was sleeping on the floor, changing positions, and did not make any indications of pain (id.). While Plaintiff disputes the accuracy of Wilson's charting, the Court finds that this dispute is not material because nowhere does Plaintiff explain what necessary medical treatment he was denied. In his response, Plaintiff simply declared that Wilson denied him "needed medical care" (Doc. # 127 at 22). But Plaintiff acknowledged that the fall from his bed could not have broken any bones (Doc. # 112, Ex. 11, Pl. Dep. 79:6-10). And even if Wilson was unkind to Plaintiff, that does not rise to the level of a constitutional violation unless she purposefully disregarded a substantial risk to Plaintiff's health.[11] In short, Plaintiff's conclusory response that he was denied unspecified medical care is insufficient to defeat summary judgment. Taylor, 880 F.2d at 1045. Because Plaintiff has failed to allege or

---

[11] In his deposition, Plaintiff stated that a detention officer placed his mattress on the floor for him to sleep (Doc. # 112, Ex. 11, Pl. Dep. 79:24-80:1-5). Plaintiff does not explain how sleeping on the floor constitutes deliberate indifference, particularly if he was prone to falling out of the bed.

demonstrate what necessary treatment that he did not receive, Wilson is entitled to summary judgment.

**VII.  Count VIII - Defendant Aldrete**

In Count VIII, Plaintiff alleged that Aldrette intentionally assigned Plaintiff a cell furthest away from the phone and showers, causing him extreme pain (Doc. # 57 at 20).

**A.    Defendants' Contentions**

Defendants contend that on November 29, 2007, Plaintiff was discharged from the infirmary and Aldrete assigned Plaintiff to a cell (DSOF ¶ 39).  Defendants argue that there is no evidence that Aldrete made a conscious decision to ignore Plaintiff's medical needs or place him in a cell that posed an unreasonable risk to his health or safety because Plaintiff's medical records do not reflect that he wanted a different cell (DSOF 40).  Moreover, Defendants claim that Plaintiff has not alleged that Aldrete knew of and disregarded a substantial risk to Plaintiff's health or safety and, therefore, Aldrete could not have been deliberately indifferent to Plaintiff.

**B.    Plaintiff's Contentions**

Plaintiff responds that he arrived in a wheelchair to the psychiatric housing unit after his discharge from the infirmary (Doc. # 127 at 22).  Consequently, Plaintiff argues that Aldrete's cell assignment away from the showers was deliberately indifferent (id.).  Further, Plaintiff contends that Aldrete denied all of Plaintiff's medical requests (id.).

**C.    Analysis**

Aldrete is entitled to summary judgment because Plaintiff has not explained—and provides no evidence—how a cell placement down the hall from the showers constitutes a substantial risk to his health or safety.  Even if Plaintiff arrived to the housing unit in a wheelchair, that is insufficient to place Aldrete on notice that Plaintiff faced a substantial threat of harm in getting to the showers.  Moreover, Plaintiff's medical records reflect that on November 27, 2007, he was up and walking with minimal difficulty (Doc. # 112, Ex. 19). From these facts, there is simply no evidence that Aldrete was aware of and disregarded a substantial risk to Plaintiff's health or safety.  Nor does Plaintiff specify what medical

treatment he needed but was denied. Like above, Plaintiff merely concludes that he was denied medical treatment without specifying what treatment was necessary. Aldrete is entitled to summary judgment.

**VIII.     Count IX - Defendant Drapeau**

In Count IX, Plaintiff alleged that Drapeau took his wheelchair on November 26, 2007, causing extreme pain (Doc. # 57 at 21).

**A.     Defendants' Contentions**

Defendants argue that Drapeau, a psychiatrist, examined Plaintiff on November 27, 2007, and wrote a thorough progress note following the meeting that makes no mention of Plaintiff's wheelchair (DSOF ¶ 45). Drapeau recommended continuing suicide precautions, retrieving Plaintiff's prior chart, and continuing medications as ordered (id.). Drapeau also saw Plaintiff the next day and ordered that Plaintiff be permitted to use his wheelchair to and from court (id. ¶ 46). Further, Defendants assert that another medical staff member noted in Plaintiff's chart on November 27 that he was up and ambulating with minimal difficulty (id. ¶ 44). Consequently, Defendants maintain that there is no evidence that Drapeau knew of and disregarded a substantial risk to Plaintiff's health or safety.

**B.     Plaintiff's Contentions**

Plaintiff responds that upon his arrival at the Lower Buckeye Jail psychiatric unit, Drapeau took his wheelchair which caused him to fall several times (Doc. # 127 at 23).

**C.     Analysis**

The Court finds that Drapeau is entitled to summary judgment because Plaintiff has not introduced any evidence that Drapeau discontinued Plaintiff's wheelchair. The evidence he cites in his response fails to provide any link between Drapeau and the loss of his wheelchair (Doc. # 120, Ex. 40). Moreover, even if Drapeau discontinued Plaintiff's wheelchair, there is no evidence in the record that Drapeau was aware that not having a wheelchair placed Plaintiff at a substantial risk of serious harm. Plaintiff does not dispute that on November 27, 2007, he was observed walking with minimal difficulty. Consequently, Drapeau would not have had notice that depriving Plaintiff of a wheelchair

- 16 -

was "medically unacceptable." Jackson, 90 F.3d at 332. Further underscoring this conclusion is Drapeau's recommendation that Plaintiff be given a wheelchair for transportation to and from court (DSOF ¶ 47). In short, there is no evidence that Drapeau took any action in conscious disregard of Plaintiff's health or safety and she is entitled to summary judgment on Count IX.

## IX. Count X - CHS #426

In Count X, Plaintiff claimed that he was denied psychiatric care by CHS # 426 for two months (Doc. # 57 at 22).

### A. Defendants' Contentions

Defendants allege that upon Plaintiff's return to the jail on April 10, 2007, Plaintiff was interviewed by medical staff for a medical receiving form (DSOF ¶ 50). Plaintiff reported a history of depression and that he was taking Wellbutrin. Plaintiff further stated that he had never attempted suicide and had no thoughts of hurting himself (id.). Vondach—CHS #426—saw Plaintiff on April 17, 2007, following Plaintiff's request for Wellbutrin. Vondach documented their meeting in Plaintiff's chart and requested that Plaintiff's prison medical records be faxed (DSOF ¶ 51). The next day, a CHS employee faxed a medical records request to the prison (DSOF ¶ 52). Plaintiff subsequently underwent a mental health evaluation on May 16, 2007, and was prescribed Wellbutrin (DSOF ¶ 54). On these facts, Defendants argue that Vondach was not deliberately indifferent to Plaintiff's medical needs because he sought Plaintiff's medical records and Plaintiff received his psychiatric evaluation within 30 days. Further, Defendants maintain that Plaintiff has not alleged or demonstrated any harm from the delay he experienced in receiving his Wellbutrin prescription, thereby precluding a finding of deliberate indifference.

### B. Plaintiff's Contentions

Plaintiff counters that Vondach was aware of Plaintiff's need for psychiatric care, but completely denied all treatment (Doc. # 127 at 24-25). Specifically, Plaintiff maintains that Vondach was aware of Plaintiff's prior psychiatric treatment, but did nothing to ensure Plaintiff received appropriate medication (id.). Further, Plaintiff claims that he was

incarcerated at the jail between January and February 2007, which should have put Vondach on notice regarding his need for medication (id. at 26).

### C. Analysis

Plaintiff's claim is that the delay he experienced in receiving his psychiatric medication from April 10-May 16, 2007 constitutes deliberate indifference. This claim fails for two reasons. First, there is no evidence that Vondach was aware of Plaintiff's prior Wellbutrin use. Plaintiff's medical records establish that on April 17, 2007, Vondach was seeking information regarding Plaintiff's prior medical history. If, as Plaintiff suggests, Vondach was aware of his history, he would not have sought Plaintiff's medical records. This precludes a finding of deliberate indifference. To the extent that Plaintiff's argues Vondach *should* have been aware of Plaintiff's prior medical history at the jail and elsewhere, Vondach would merely be negligent in his lack of knowledge, which does not rise to the level of a constitutional violation. Broughton, 622 F.2d at 460.

More importantly, however, Plaintiff has not alleged any harm from the approximately 4 week denial from Vondach's interview to Plaintiff receiving his Wellbutrin, which also precludes a deliberate indifference finding. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). For these reasons, the Court finds that Vondach is entitled to summary judgment on Count X.

### X. Count XII - Defendants CHS #718 and #221

In Count XII, Plaintiff claimed that CHS Supervisors #718 and #221 were deliberately indifferent to his serious medical needs by responding to his grievances with various excuses and denying and delaying his medical care (Doc. # 57 at 25).

### A. Defendants' Contentions

Defendants argue that CHS employees #718 and #221 responded to 27 of Plaintiff's grievances and 21 of those grievances were either withdrawn, informally resolved, or not appealed to the External Appeal level (Doc. # 112 at 27). Defendants point to Plaintiff's deposition testimony, wherein Plaintiff acknowledges that neither #718 or #221 was aware

that he would subsequently be diagnosed with osteomyelitis or aware of a substantial risk of serious harm to his health (DSOF ¶ 66). Consequently, Defendants argue that neither #718 or #221 could have been deliberately indifferent to Plaintiff's serious medical needs.

## B. Plaintiff's Contentions

Plaintiff responds that #718 and #221 responded to his grievances with various excuses and refused to act on Plaintiff's behalf (Doc. # 127 at 26).

## C. Analysis

CHS Supervisors #718 and #221 are also entitled to summary judgment because Plaintiff fails to specify the specific actions each Defendant allegedly took that were deliberately indifferent to Plaintiff's serious medical needs. When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." Id. at 634. He must prove that the specific prison official was deliberately indifferent and that this indifference was the actual and proximate cause of the injury. Id. Plaintiff has failed to introduce any evidence tending to show what exactly #718 and #221 allegedly did that caused a constitutional violation.

Moreover, because the Court has found that Plaintiff's medical care does not raise constitutional concerns, #718 or #221 could not be deliberately indifferent in failing to intervene. Consequently, #718 and #221 are entitled to summary judgment on Count XII.

## XI. Count XIII - Defendant Blacek

Plaintiff alleged that Blacek was deliberately indifferent to his serious medical needs when she refused to give him his prescribed pain medication on November 9-11, 2007, despite writing in his chart that he received his medication (Doc. # 57 at 26).

## A. Defendants' Contentions

Defendants argue that Blacek was not deliberately indifferent to Plaintiff's serious medical needs. They point to evidence that Plaintiff's prescriptions were changed and

800mg Ibuprofen tablets were ordered for Plaintiff on November 8, 2007 in lieu of lower dosage Ibuprofen (DSOF ¶ 70). Further, Defendants contend that even if there was a charting error that indicated Plaintiff received Vicodin on November 9-11, it would not amount to anything more than negligence (Doc. # 112 at 28-29). Finally, Defendants maintain that Plaintiff acknowledged in his deposition that Blacek was not objectively aware of a substantial risk of serious harm to Plaintiff's health, thereby precluding a finding of deliberate indifference (DSOF ¶ 63).

### B.    Plaintiff's Contentions

Plaintiff maintains that Blacek told him his Vicodin prescription was discontinued but wrote in his chart that he received it (Doc. # 127 at 27). As a result, Plaintiff argues that Blacek knew he needed Vicodin, but deliberately ignored that need (id.).

### C.    Analysis

The evidence reflects that Blacek is entitled to summary judgment because Plaintiff has offered no evidence to establish that Blacek was anything more than negligent in failing to properly chart Plaintiff's prescriptions. The record indicates that Plaintiff's medications were changed effective November 8, 2007 (Doc. # 112, Ex. 30). Even assuming Plaintiff's claim that he did not receive Vicodin on November 9-11, he cannot prevail on a deliberate indifference claim unless there is some evidence that Blacek's actions were purposeful. Plaintiff's speculation that her charting error was anything more than negligent is insufficient to create a genuine issue of material fact because Plaintiff has no independent knowledge of Blacek's motives. Indeed, Plaintiff's own response indicates that Blacek believed his Vicodin had been discontinued for 800mg Ibuprofen tablets (Doc. # 127 at 28). Even if she was incorrect, this does not establish that she purposefully withheld Vicodin from Plaintiff with the knowledge that he faced a substantial risk of serious harm. Indeed, as of November 8, Plaintiff had been diagnosed with a muscle strain, which would not put Blacek on notice that Vicodin was necessary to treat Plaintiff's condition. Moreover, the Ninth Circuit has found that a denial of pain medication for two days does not rise to the level of deliberate indifference. Wood v. Housewright, 900 F.2d 1332, 1333-35 (9th Cir. 1990) (holding that

a delay of several days in receiving pain medication for a broken shoulder did not amount to a constitutional violation). For these reasons, the Court finds that Blacek is entitled to summary judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. # 112).

(2) Defendants' Motion for Summary Judgment (Doc. # 112) is **granted**.

(3) The Clerk of Court shall dismiss this action and enter judgment accordingly.

DATED this 26th day of March, 2010.

Mary H. Murguia
United States District Judge